# Chicago, Burlington and Quincy Railroad Co.

## *v.*

## Patrick McGinnis.

| 79 | 269 |
| 141 | 58 |
| 41a | 589 |
| 79 | 269 |
| 149 | 297 |
| 79 | 269 |
| 165 | 518 |
| 79 | 269 |
| 69a | 512 |
| 79 | 269 |
| 171 | 514 |

1. RAILROADS—*not liable for damages to property on streets along which they run.* It has been the long settled doctrine in this State, that when, by the charter of a city, its local authorities are vested with exclusive control over the streets, and these authorities grant permission to lay down railway tracks along a street, the owners or occupants of property fronting on such street can not enjoin the laying of such track, nor be allowed any damages or compensation for such use of a street.

2. MEASURE OF DAMAGES—*in suit against a railroad company for injury to property upon a street.* The recovery of damages in a suit against a railroad company for injury to property fronting on a street in a city over which it passes, where there is any liability at all, is confined to the direct physical injury done to the property by the operation of the road; and it is erroneous to permit the plaintiff to prove what the value of the property and its rental value is with the railroad, and what it would be without the railroad.

3. Where the plaintiff, in a suit against a railroad company to recover for damages to his property, occasioned by the building and operating the road along a public street in front of the property, proved what, in the opinion of witnesses, the rental value of the property would have been without the railroad and what it was with the railroad, it was admissible for the defendant, in rebuttal, to show that there were a gas factory and starch factory near the premises, to lay the foundation for a judgment that the depreciation of rental value was not wholly due to the railroad, and to what extent these other causes might have contributed to produce such depreciation.

4. And in such a suit, where the plaintiff testified that certain trestle work upon which the railroad track was laid, in front of plaintiff's property, was unnecessarily high, such testimony tended to show that the defendant had been guilty of negligence, and that the plaintiff was unnecessarily injured thereby, and the defendant should have been permitted to prove that the building of the trestle work, in the manner in which it was built, was necessary, in order to cross a river at that point, and overcome the grade on the opposite side.

APPEAL from the Circuit Court of LaSalle county; the Hon. EDWIN S. LELAND, Judge, presiding.

The Ottawa, Oswego and Fox River Valley Railroad Company was chartered June 21, 1852.  It constructed a railroad through the city of Ottawa.  From the Illinois river, north, it passed over a public street, known as Walker street, in pursuance of an ordinance of the city council of the city of Ottawa, authorizing the construction of a railroad along that street.   The plaintiff was the owner of lot 8, in block 1, in Walker's addition to Ottawa, which abutted upon that street, on which lot he had a dwelling house, in which he resided, and another smaller building, which he rented.

The lots were laid out before the street was dedicated, and no portion of the street was taken from these lots, so that the fee of the street was never in the plaintiff.   The road was constructed and in operation along the street prior to the adoption of the present constitution of the State.   The Ottawa, Oswego and Fox River Valley Railroad Company, on the 20th day of August, 1870, executed a lease of this road to the Chicago, Burlington and Quincy Railroad Company, and surrendered the possession thereof to the latter company on the 20th day of January, 1871, since which time the road has been operated by the last named company.

Plaintiff brought this suit against the Chicago, Burlington and Quincy Railroad Company, claiming damages to his premises aforesaid, arising from the construction of the road along the street, and the maintenance and operation of the road thereon.   A trial had, resulted in a verdict and judgment against the defendant, and it prosecutes this appeal.

The track of the railroad in front of this lot is laid upon trestle work, extending from the railroad bridge across the Illinois river on the south, to a point several rods north of the lot.   The top of the trestle work, at the south-east corner of the lot, is nine and one-third feet above the street, and thence north the height gradually decreases, until, at the north-east corner of the lot, it is about six feet above the street.   This trestle work is the approach of the railroad to the railroad bridge across the river.   From the east front of

the lot to the west rail of the railroad, the distance is thirty-one feet, four inches.  A short distance north of the lot is a passenger and freight depot, and trains stopping there were run down to and allowed to stand in front of appellee's premises.  Dust, smoke and cinders from the cars and locomotives passing and standing upon the track, when there was an east wind, would be blown into appellee's houses and upon his premises.  Vehicles were prevented, by the trestle work, from crossing the street, except at the south end, where they could pass under.  These are plaintiff's chief causes of complaint.

Mr. B. C. Cook, for the appellant.

Mr. D. P. Jones, for the appellee.

Mr. Justice Sheldon delivered the opinion of the Court:

There are two questions here presented : one upon the rejection of the testimony, the other as to the rule of damages, adopted by the court below.

The court permitted the plaintiff to prove what, in the opinion of witnesses, the rental value of the place would have been without the railroad and what it was with the railroad. The defendant offered to prove, in cross-examination and by direct evidence, that there were a gas factory and a starch factory near the plaintiff's premises, which were offensive things, and made the premises undesirable for any one to occupy, and tended to depreciate their rental value.

The court excluded the testimony.  The rental value of the premises having been made by the plaintiff a subject of evidence, it was admissible in rebuttal to show the existence of these other causes which affected such rental value, to lay the foundation for the contention that the depreciation of rental value was not wholly due to the railroad, and to show to what extent these other causes might have contributed to produce such result.

The plaintiff gave testimony, to the effect that, in his opinion, the trestle work need not have been so high—that he did not believe it necessary to have it there.

The defendant offered to prove, by civil engineers, that the building of the trestle work in the manner in which it was built was necessary, in order to cross the river and overcome· the grade on the opposite side, but the court refused to admit this testimony. The testimony given by the plaintiff tended to show that the company had been guilty of negligence and want of proper care in constructing the road in a proper manner, so that the plaintiff was unnecessarily injured. It was surely competent for the defendant to rebut this, by showing that the trestle work was necessary; that there was no want of proper skill and care in the construction of the road in such manner; and that plaintiff was not needlessly injured. We think that, upon the theory on which the case went to the jury, both descriptions of testimony were improperly rejected.

The Ottawa, Oswego and Fox River Valley Railroad Company, by its charter, had a legal right to construct and operate this railroad. The city council of Ottawa was vested with the exclusive control and regulation of the streets of the city. It granted to the railroad company permission and authority to construct, use and maintain a railroad track upon this Walker street, in front of plaintiff's lot.

The trestle work in question we may suppose, as was offered to be proved, was a necessary erection in the proper construction of the railroad.

It has been the long settled doctrine in this State, at least anterior to the adoption of the constitution of 1870, that where, by the charter of a city, its local authorities are vested with exclusive control over the streets, and those authorities grant permission to lay down railway tracks along a street, the owners or occupants of property fronting on such street can not enjoin the laying of such tracks, nor be allowed any damage or compensation for such use of a street. *Moses* v.

*The Pittsburgh, Ft. Wayne and Chicago Railroad Co.* 21 Ill. 516 ; *Murphy* v. *The City of Chicago,* 29 id. 279 ; and see *Stone* v. *Fairbury, Pontiac and Northwestern Railroad Co.* 68 Ill. 394.

The court below, against the objection of the defendant. permitted evidence to be given of what would have been the value of the property, and its rental value, without the railroad, and what they were with the railroad. This was adopting an erroneous rule of damages, and this may be said without reference to the question of the bearing of the provision of the constitution of 1870, that "private property shall not be taken or damaged for public use without just compensation," upon a railroad constructed before the adoption of the constitution. In *Stone* v. *Fairbury, Pontiac and Northwestern Railroad Co. supra,* in respect to a railroad constructed since the adoption of the constitution of 1870, while it was held there was a right of recovery against a railway company for a direct physical injury done to adjacent property, by throwing smoke and cinders upon it, it was said there were various annoyances and inconveniences arising from a railroad which would cause damage to property for which there would be no remedy. For any damage on account of the trestle work in this case, we are of opinion there was no right of recovery.

Recognizing, as the court below did, the rule of damages to be the difference between the value of the property without the railroad and with the railroad, would be to allow a recovery for damage to the property from all causes whatsoever by reason of the railroad, and so of the rental value in such respect. If there be any liability in respect of the dust, smoke and cinders—as to which, under the circumstances of this case, we express no opinion—the inquiry should have been confined to the question of what material damage, if any, was done to the property by the throwing of dust, smoke and cinders upon it.

For the errors indicated, the judgment will be reversed and the cause remanded.

*Judgment reversed.*