GEORGE GARTNER V. CHICAGO, ROCK ISLAND & PACIFIC RAILWAY COMPANY.

FILED MARCH 17, 1904. No. 13,430.

1. **Lands:** ACTION FOR DAMAGES. One in possession of real estate, under a contract with the owner for the purchase thereof, has sufficient title to maintain an action for damage to the land.

2. ———: ———. In such case, it is not necessary for the plaintiff to shcw the precise nature of his contract, so long as it sufficiently appears that, at the time the damage accrued, he was in possession under a contract of that character.

3. **Error:** REVIEW. Where the evidence on a vital proposition is erroneously excluded, it is not necessary for the party offering it to proceed to establish other propositions in his case in order to predicate error on such ruling.

4. **Successive Actions.** Where an obstruction causing the overflow of water and consequent damage to adjacent lands is of such a character that, unless interfered with by the hand of man, it will continue indefinitely, the damages, past and prospective, are recoverable in one action, and successive actions therefor can not be maintained.

ERROR to the district court for Pawnee county: JOHN S. STULL, JUDGE. *Reversed.*

*Storcy & Storcy,* for plaintiff in error.

*Hazlett & Jack, contra.*

ALBERT, C.

The petition states two cause of action: The first, so far as is material at present, is substantially as follows:

That in 1896, under and by virtue of a contract of purchase with the owner thereof, the plaintiff entered upon and took possession of certain real estate, and continued to keep possession thereof under said contract of purchase until 1898, when he paid the full amount of the purchase price, and the title in fee was conveyed to him by the owner; that the defendant's road extends through and across the above premises, and on the 11th day of March, 1897, the defendant negligently and carelessly caused a fire to be set out by one of its engines, whereby a certain orchard on said premises was wholly destroyed and the plaintiff damaged in the sum of $355. The second cause of action is for damage for the negligent construction and maintenance of a roadbed or embankment across a ravine, whereby the surface water is accumulated and thrown back upon the plaintiff's land.

As to the first cause of action, so far as the questions raised in this court are concerned, the answer may be said to be a general denial. As to the second cause of action, the defendant entered a general denial,. except as to some formal matters, and a plea of a former adjudication. The reply amounts to a general denial.

At the close of the testimony the court directed a verdict for the defendant, and the plaintiff brings error.

As to the first cause of action, the principal complaint of the plaintiff is based on the rejection of certain evidence offered by him to show sufficient title to enable him to maintain the action. The pleading and the proof show that he was not the holder of the legal title to the premises at the time the alleged loss occurred. Hence the case does not fall within the general rule stated in 13 Ency. Law (2d ed.), 432, to the effect that, in an action for damages for injuries to real estate, actual exclusive possession is sufficient evidence of title, unless the defendant shows an outstanding adverse title of higher dignity than a mere possessory one. In other words the plaintiff having shown an outstanding title in fee simple at the time the loss occurred, bare proof that he was in possession of the premises at the time would not make a *prima facie* case as to his right to maintain the action. He took the stand in his own behalf and testified that in 1894, and while his brother was the owner of the premises, he went into possession thereof— under what arrangement does not appear—and continued in possession until after the loss occurred, which was on the 11th day of March, 1897; that on the 24th day of December, 1896, and while he was thus in possession of the premises, he entered into a contract with his brother for the purchase thereof. He produced a letter which he testified to having received from his brother, which is as follows:

"BELOIT, WIS., Dec. 4, '96.

"DEAR BROTHER GEORGE: I received your letter of the 2, it found me well and I hope these few lines will find

you all the same.   I will take $30 an acre, you will have to measure the land.   I think there must be 107 acres they have no right to tax a man for land if he has not got it you send me $200 so I get it next week and the rest as you say in your letters.   How many bushels of rye was there and what is it worth and how many bushels of corn is there and what is it worth.   Is Kretzer there or have they moved away.   I will close for this time.   By by with love to all from your brother.      HENRY J. GARTNER."

He testified that this letter was in reference to the premises in question, that he and his brother had previous correspondence with reference thereto, and that he bought the premises on the strength of that letter which he called his contract; that he made his first payment on the land December 24, 1896, and completed his payments thereon in 1898, and thereafter received a deed of conveyance there-for from his brother.   Two other letters from his brother were produced and identified, which the plaintiff offered to show were in regard to the same transaction.   They are as follows:

"BELOIT, WIS., Feb. 6, '96.

"DEAR BROTHER GEORGE:   I received your letter of 2, it found us all well and I hope these few lines will reach you all the same.   I am positive that I have made a deed to you for the land before we moved here on the north side of the R. R.   You look up the reckords and see if not you will have to measure the land on the north side so I will now about how many acres there is so I can make the deed. You must have forgot tht I was to have intrist at seven per cent. for $1,000 from Dec. 1, 1896, till it is paid; you have only sent me $200 on the $1,000 in Dec. so it will be more than $870 till you get it paid.   I will not be able to handle any corn for it is only fetching 25c a bu. here will you tell Lewis send me the receipt to make the salve that he makes I have lost the one he gave me.   I do not know what the Pentacosts are doing with Bain I think C. F. Nigh the Co. Tr. at Pawnee City is appointed ad-

ministrator over the property there so I think he will see about Bain. Has Bain any winter grain on Pentacosts land. By by your brother with love to all.

"HENRY J. GARTNER.

"If I remember correctly I mad a deed to you that you was to pay $700 of the $1,700."

"BELOIT, WIS., Oct. 25, '98.

"DEAR BROTHER GEORGE. I received your letter and draft it found us all well as usual and I hope these few lines will reach you all the same enclosed you will find the deed. Mr. Livermore said it will be just as good as to make a new deed and save the expense and time of riting a new deed and as for you to sending the tax receipts they are of no use to me since you have bought the place. I wish you would go to Pawnee City and pay the taxes on my lot 4 and part lot 3 you no which are my lots and see if there are any back taxes and straighten them up and send the tax receipts and I will pay you and se if the little three corner on the north side of the R. R. right away and on the south side of the S. E. corner block of the village of Gartner is taxes separate and are paid and about the land at Amboy Ill. I am not able to say anything unless I would go there; it will cost me about $6 car fare to go thair besides my time it will take perhaps about 2 days; I had a man tell me that it must be the worst kind of marsh land for you can not get good land at any such figers. If you want me to look at that land I will tell you just what it is but you will have to give me the exact description of the land and I will look it up. So by by from your brother with best regards to all. HENRY J. GARTNER."

The deed was also produced. It appears to have been acknowledged on the 2d day of February, 1896, and to have been originally made to another party, whose name is erased and that of the plaintiff substituted. These several letters and the deed were offered in evidence and excluded; the offer of the plaintiff to show that the second and third

letters referred to the land in question was also rejected. The exclusion of this evidence is now assigned as error.

The objections to the introduction of this evidence are couched in the most general language, and seem to have been made and sustained on the theory that the evidence offered was insufficient to show a complete contract of purchase between the plaintiff and his brother. Had it been necessary for the plaintiff to show the precise terms and conditions of such contract, this evidence doubtless would have been insufficient. But such was not the case. The question before the court at that time was not the precise nature of the plaintiff's contract with his brother, but whether plaintiff's title to the land at the time the loss occurred was sufficient to enable him to maintain the action. In his petition he alleged an equitable title, based on his possession of the premises under the contract for the purchase thereof, which would be sufficient title to enable him to maintain the action. *Omaha & R. V. R. Co. v. Brown*, 29 Neb. 492. The first letter contains an offer from the owner of the land of the terms upon which he would sell. The second is dated February 6, 1896, but from its contents it is clear that the date is a mistake and should be 1897. This letter shows that the owner of the land was preparing to execute a deed for the land to the plaintiff, and reminds him of the terms upon which payment is to be made. The third refers to an enclosed deed, and acknowledges receipt of a draft. Taking the letters and the deed, in connection with the plaintiff's evidence that he entered into possession on the strength of the first letter, and had fully paid for the land before he received the deed, and with his offer to show that the letters all refer to the land in question, it seems to us the evidence excluded would have strongly tended to show, to say the least, that the plaintiff at the time the loss occurred was in the possession of the premises under the contract with the owner for the purchase thereof, and should have been received. So far as the deed itself is concerned, the last letter shows that it was originally

32

made to another party, and that the grantor, in order to save expense, erased the name of such third party and inserted that of the plaintiff. Whether such change was made before or after the formal execution of the deed is not entirely clear, nor is it material for present purposes to inquire, because if ineffective as a conveyance of the legal title, there can be no doubt of its evidential value, taken in connection with the other evidence on the question whether the plaintiff was in possession under a contract of purchase. It is contended that the exclusion of this evidence was error without prejudice, because the plaintiff failed in his proof on other features of the case. This contention, we think, is without merit. One of the propositions which the plaintiff was required to establish, in order to recover on his first cause of action, was that he had sufficient title to the premises when the loss occurred to enable him to maintain the action. When his proof on that proposition was rejected, erroneously, we think, he was doomed to defeat, whatever proof might be forthcoming on other branches of the case. The law does not require vain things, and does not, therefore, require a litigant to furnish proof which could in no manner affect the result of the trial. This of course applies only to the cause of action in support of which the evidence was offered.

As to the second cause of action, it is pleaded as a defense, and conclusively shown in evidence, that soon after the construction of the roadbed or embankment, alleged to have caused the overflow of plaintiff's lands and consequent damage thereto, the then owner of the lands from whom plaintiff's title to such lands is derived brought an action against the defendant and another, asking judgment on these causes of action, one of which was for damage for injury to a part of said lands by reason of the negligent construction of such roadbed or embankment, whereby surface water was thrown back and over the lands. In that action, judgment was given generally for the plaintiff, which was subsequently paid.

The general rule is that, where the obstruction causing

the overflow of water and consequent damage to the land is of such a character that, unless interfered with by the hand of man, it will continue indefinitely, the damages, past and prospective, are recoverable in one action, and successive actions therefor can not be maintained. *Hodge v. Shaw,* 85 Ia. 137; *McGillis v. Willis,* 39 Ill. App. 311; *Pierro v. St. Paul & N. P. R. Co.,* 39 Minn. 451. The cause of action is single and indivisible, and when it passes into judgment, such judgment is a bar, not only to a subsequent action for the damages to the land actually litigated, but to a subsequent action for any such damage thereto as might have been litigated in the former suit. *Perry v. Dickerson,* 85 N. Y. 345; *Baird v. United States,* 96 U. S. 430; *DeWeese v. Smith,* 97 Fed. 309; *Bartels v. Schell,* 16 Fed. 341; *Beronio v. Southern P. R. Co.,* 86 Cal. 415; *Broxton v. Nelson,* 103 Ga. 327, 68 Am. St. Rep. 97. That such judgment is binding not only on the parties but their privies is elementary.

The obstruction complained of in this case is the same one that was alleged to have caused the damage in the former suit; it is of a permanent character, and one which will continue indefinitely unless interfered with by the hand of man. It follows, then, from what has been said, that the entire damage to the land, past and prospective, was recoverable in the former suit, and that the judgment rendered therein is a bar to the plaintiff's second cause of action.

There is one point of difference in the petition in the former case and that in the present which requires notice. In the former, a total lack of provision for carrying off the water is averred; in the present, it is alleged in effect that no such provision had been made save a certain ditch, which, it is alleged, was of insufficient capacity and fall to carry off the water, and which the defendant had permitted to become and remain obstructed. The ditch was constructed before the former suit was brought, and any faults in its original construction were part of the plaintiff's case at that time. Hence, not only the negligent construction

of the road itself, but also of the ditch which was a part of the same project, is eliminated from the present case by the former adjudication. If, then, the plaintiff has a cause of action for the overflow of his land, it must be for such overflow as was occasioned by the obstruction of the ditch, as that is the only act or omission approaching negligence averred which is not included in the former adjudication. But there is a total failure to show what portion, or that any portion, of the alleged damage was occasioned by the omission to keep and maintain the ditch free from obstructions. It follows, then, that the defendant was entitled to the direction of a verdict so far as the second cause of action is concerned. But as the judgment and verdict are general, for the erroneous exclusion of the evidence offered by the plaintiff in support of his first cause of action, the judgment should be reversed and the cause remanded for further proceedings acording to law.

FAWCETT and GLANVILLE, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is reversed and the cause remanded for further proceedings according to law.

REVERSED.