. Foster Lumber Co. v. Arkansas Valley & W. Ry. Co.

No. 1900, Okla. T.    Opinion Filed April 13, 1908.

(95 Pac. 224.)

1.    **EMINENT DOMAIN—Injuries to Property—Right of Action—Equitable Title.** One who owns the equitable title to real property and is in possession of same may maintain an action for permanent injuries thereto.

2.    **SAME—Railroads in Street—Right of Access.** An abutting property owner whose means of access to his property has been cut off or materially interrupted by the building of a railway track upon the street in front of said property may recover damages therefor.

(Syllabus by the Court.)

*Error from District Court, Noble County.*

Action for damages by the Foster Lumber Company against the Arkansas·Valley & Western Railway Company. Judgment for defendant and plaintiff brings error. Reversed and remanded.

This action was brought by the plaintiff in error as plaintiff in the district court of Noble county, Oklahoma Territory, against defendant in error as defendant, seeking to recover damages alleged to have been sustained by plaintiff in error on account of the construction of a railway by the defendant in error upon one of the streets in the city of Perry. Plaintiff alleges in its petition that it is the owner of two certain lots in the city of Perry fronting upon A street, a public street in said city, and that about the 1st day of October, 1903, the defendant without the consent of plaintiff erected a large fill immediately in front of the plaintiff's property, and built in front of said property a steam railway track a distance of about 20 feet from the curb line of plaintiff's property, thereby greatly obstructing the means of ingress and egress to and from said lots and rendering them unfit

for business purposes, and that, on account of such obstruction, said property of the plaintiff was diminished and depreciated in value in the total sum of $3,000. A second cause of action was alleged in plaintiff's complaint, but, as )same appears to have been abandoned by plaintiff in the trial of the case, we do not consider it necessary to make further reference to same.

Defendant filed its answer, and denied that plaintiff was the owner of the lots at the time said railway was built by it, and at the time said damages alleged to have been sustained by plaintiff occurred, and further averred that it had obtained from the city of Perry a grant, granting to it the right to use and occupy certain of the parks, streets, and alleys in the city of Perry; that A street is one of the streets, the use of which for railway purposes had been granted to it by the city of Perry, and that it erected railway tracks, roadbeds, and switches complained of in plaintiff's petition on said street by virtue of and under the authority conferred and granted to it under the ordinance of the city of Perry granting it the right to build upon said street a railway.

Plaintiff introduced evidence to sustain the allegations of its complaint, and rested its case. Thereupon defendant demurred to the plaintiff's evidence, which was sustained, and judgment rendered for defendant. A further statement of facts will appear in the opinion of the court.

*H. B. Marlin* and *D. M. Tibbetts*, for plaintiff in error.
*James B. Diggs* and *Flynn & Ames*, for defendant in error.

HAYES, J. (after stating the facts as above). Plaintiff introduced in evidence in support of its allegation of ownership of said lots a deed from Timothy McGrath, Amos B. Fitts, and Fred L. Bailey, as trustees for the townsite of Perry, Okla., to Thomas S. Foster, of date the 2d day of April, 1895, conveying to the said Thos. S. Foster lots 7 and 8, in block 46, in the city of Perry, and being the lots involved in this action, and further introduced in evidence a deed of date the 25th day of July, 1896, from Thos. S. Foster, conveying said lots to Benj. B. Foster. The deposition

of Benj. B. Foster was then read in evidence, by which it was proved that about the time of the opening of the townsite of Perry said Thos. S. Foster and Benj. B. Foster, as a partnership, were engaged in the lumber business in the city of Perry; that said partnership occupied said lots as a lumber yard during the existence of the partnership; that later there was organized the Foster Lumber Company, a corporation, to whom was sold all the property and assets including the real estate of the partnership theretofore composed of Thos. S. Foster and Benj. B. Foster; that from the time of the opening of the townsite of Perry said lots had been occupied either by the partnership or by the plaintiff in this action; that while the deed to said lots was taken in the name of Thos. S. Foster, who afterwards conveyed the same to Benj. B. Foster, the purchase price of same was paid out of the funds of the partnership, and that said lots never, in fact, belonged to either of the Fosters, but was at all times the property of the partnership, and that, when the assets of said partnership were sold to the Foster Lumber Company, plaintiff in error, said lots were sold to and became the property of said Foster Lumber Company, but that no deed of conveyance was ever executed by Benj. B. Foster to the plaintiff; that the Foster Lumber Company paid for all the improvements on the lots, which amounted to something over $1,000, and that said company had paid the taxes thereon. To the introduction of this testimony defendant objected. The court at the time sustained the objection as to part of same, and, later upon motion of defendant, struck out all that part of the deposition that tended to prove that plaintiff was the owner of said lots, and that, while the legal title to the same was in Benj. B. Foster at the time the alleged damages were sustained and at the time of the trial, he had no interest whatever in said lots; that he had never occupied or been in possession of the same; and that said lots had been paid for by plaintiff, and had been occupied by it as a lumber yard for a number of years.

To the action of the court rejecting said evidence, plaintiff in error makes his first assignment of error. The question pre-

sented by this assignment of error resolves itself into the proposition whether an action for damages to real property may be maintained by the holder of the equitable title. If it cannot, then said evidence was incompetent. The evidence offered by plaintiff and excluded by the court tended to prove that Benj. B. Foster held at the time of the trial and at the time of the alleged injuries involved in this action the legal title to said lots as the trustee in resulting trust for the benefit of the plaintiff. It is contended by defendant in error that this action, being for the recovery of permanent injuries or damages to the freehold, cannot be maintained by any other person than the one holding the legal title to the property injured. Sutherland on Damages, § 1012, says:

"Damages in this action [referring to an action for trespass] may be such as are appropriate to the tenure by which the plaintiff holds, and such as result from the injury suffered. Possession alone will entitle him to recover damages for any injury solely affecting it. If he seeks to recover for the future, he must show that his title gives him an interest in the damages claimed, and he can recover none except such as affect his own right, unless he holds in such relation to the other parties interested that his recovery will bar their claim."

In the case of *Hueston v. Mississippi & Rum River Boom Co.*, 76 Minn. 251, 79 N. W. 92, the plaintiff sought to recover damages resulting to a certain mill and lands adjacent thereto by reason of the defendant's having built on an island in the Mississippi river a short distance below plaintiff's land a boom for the purpose of catching logs, thereby causing the river to overflow plaintiff's land, and to break into his mill, and to greatly injure his land and mill. The evidence developed that the plaintiff occupied the land at the time the injury was suffered as the vendee under an executory contract of sale. Defendant denied plaintiff's right of recovery on the ground that plaintiff did not possess the legal title to the property injured, and contended that the right of recovery for same, if any, was in his vendor. The court

held that plaintiff could recover both for the injuries to the land and to the mill, and, commenting upon same, said:

"The general rule is that damages in an action for trespass upon real property may be such as are appropriate to the tenure by which the plaintiff holds. Possession alone will entitle him to recover damages for any injury solely affecting it. If he seeks to recover for the future, he must show that his title gives him an interest in the damages claimed, and he can recover none except such as affect his own right, unless he holds in such relation to other parties interested that his recovery will bar their claim. In this case the injury is wholly to plaintiff. He will have to pay to his vendor the full contract price, notwithstanding that the premises may have been depreciated in value by the trespass. * * * Whether he could in equity impound the· damages recovered in this action if the injury to the premises was so great as to leave them inadequate security for the unpaid installments of purchase money it is unnecessary now to inquire."

It was held in *McKenzie v. Railroad Company*, 27 W. Va. 306, that the plaintiff who held the equitable title to certain real estate could maintain an action for damages thereto with or without her husband, in whom was the legal title, joining in the action. The rule announced in that case was adopted by the same court in the case of *Clay et ux. v. City of St. Albans*, 43 W. Va. 539, 27 S. E. 368, 64 Am. St. Rep. 883, in which case the court holds that, where a conveyance of land has been made to a trustee for the benefit of the wife of another person by which she is permitted to have the possession and use of said land, although she is vested with only an equitable title, she and her husband or she alone may maintain an action for trespass to both possession and the inheritance

In *Railroad Co. v. Charles C. Ingalls*, 15 Neb. 123, 16 N. W. 762, the plaintiff in the court below sought to recover damages from the defendant for building its road, for use as a railway, upon a public road a portion of which was on plaintiff's land, thereby imposing additional burdens upon the land ·of plaintiff. It developed in the progress of the trial that the legal title to the property at the time of the alleged injury was in another per-

son than the plaintiff; that plaintiff occupied the same under a contract for purchase, and was at said time in default of payment on his contract; and that his contract, under which he held and was in possession of said land, was subject to forfeiture. The vendor, in whom the legal title existed, however, had not taken advantage of the default. The defendant in the court below insisted that no recovery could be had because defendant in error had not the legal title at the time the injury occurred, and did not have the legal title at the time of the trial. The court held in that case that defendant in error was entitled to recover; that, at most, there was a defect of parties; and that, no objection having been raised by the pleadings to such defect of parties, the same was waived. The same rule was adopted by the Supreme Court of Nebraska in *Omaha & R. V. Ry. Co. v. Brown,* 29 Neb. 513, 46 N. W. 46, in which case the court said:

"It would be very strange, indeed, if the purchaser of real estate who in equity is treated as the owner should be powerless to protect his rights in case his real estate, held under a valid contract, was injured; but such is not the law."

And the same court in *Gartner v. Chicago, Rock Island & Pacific Ry. Co.,* 71 Neb. 444, 98 N. W. 1052, held that one who is in possession of real estate under a contract with the owner for the purchase thereof has sufficient title to maintain an action for damages to the land.

That a person holding the equitable estate in land may maintain an action for injury to the freehold has been held in the following cases: *Miller v. Zufall,* 113 Pa. 317, 6 Atl. 350; *Cleveland v. Grand Trunk Ry. Co.,* 42 Vt. 449; *Rood v. New York & Erie R. R. Co.,* 18 Barb. (N. Y.) 80; *Russell v. Meyer,* 7 N. D. 355, 75 N. W. 262, 47 L. R. A. 637; *Chouteau v. Boughton,* 100 Mo. 406, 13 S. W. 877.

The facts offered to be proved by that part of the deposition of Benj. B. Foster excluded by the court would have established that Benj. B. Foster had the naked legal title to said lots as a trustee in resulting trust in favor of the plaintiff in this action.

Plaintiff was in possession, and had been ever since it was organized as a corporation, and had paid the purchase price of said lots, paid for the improvements thereon, and paid the taxes. Benj. B. Foster had never been in possession. Whatever injury occurred to said property resulting in the depreciation in the value thereof was the loss of the plaintiff. Whatever increase in the value of the same might occur would be the gain of the plaintiff. The plaintiff is the real party in interest, and in equity would be regarded as the owner of the lots, and a judgment in its favor in this case could be pleaded by defendant in an action against it by the said Benj. B. Foster upon proof of the facts offered to be proved by the plaintiff as a bar to a recovery by Benj. B. Foster. While it would have been better practice to have made the person holding the legal title a party to the suit, not having done so does not defeat the right of recovery of the plaintiff in this action, and the action of the court in rejecting said evidence was error.

The evidence introduced by plaintiff established that its lots fronted on A street, in the city of Perry, and that the same had been occupied and used as a lumber yard by plaintiff for several years; that the defendant had built upon A street in front of said lots its main line of railway and four switch tracks; that the nearest track of said railway was 10 feet from the door of the building on plaintiff's lots. The evidence further establishes that said lots are located on a corner; that on the south side of same is Seventh street, but that said street is not passable on account of their being a creek across same, over which there is no bridge; that the space between plaintiff's property and the nearest railroad track was not sufficient for teams to go in and out. There is no evidence in the record disclosing what right defendant had to build its railway tracks upon A street, or whether any permission had been granted it by the city of Perry to build the same upon said street; but it appears from the record that the case was tried in the court below upon the theory that authority had been obtained from the city of Perry by the defendant to construct its

railroad upon said street, and such is the theory of the case as presented by the briefs of both parties filed in this court, and we shall therefore consider the case upon the theory upon which it was tried in the court below and as presented in the briefs of the parties.

It is contended by plaintiff that defendant, by constructing its tracks of railway, the nearest of which is within 10 feet of plaintiff's property, has greatly obstructed and injured its means of ingress and egress to and from its said lots, and has rendered the same unfit for business purposes, and for the purposes for which plaintiff was using them, and that, on account of such obstruction to plaintiff's means of ingress and egress to and from its lots, the same have been greatly diminished and depreciated in value, and that such acts of defendant constitute a "taking" of plaintiff's property. Plaintiff has by virtue of its ownership of said lots, an interest in street A on which said lots abut, and a right therein common with the public to pass over the same as a public highway. In addition thereto, it has a special right in said street not common to the public, to wit, the right of ingress and egress over the same to and from its lots. The decisions of the courts made under statute or constitutional provision to the effect that the complaining party can recover only where there is a "taking of private property for public use" are nearly uniform on the question that, where the injury complained of by the abutting property owner is one that is common to the general public, such injury is *damnum absque injuria*. The decisions of the courts, however, are by no means uniform upon what constitutes a "taking" of property in cases similar to the one at bar, but we believe the weight of the better authorities, if not the greater in number, is that such a "taking" may result without conversion of the property or any part thereof, as under statutes and constitutionl provisions which provide that private property shall not be taken for public use without compensation. Some of the courts have held that, where no conversion of the property is made, there must be a physical injury to the same, or a physical invasion

thereof before a right of recovery exists. *Chicago, Burlington & Quincy Ry. Co. v. Patrick McGinnis*, 79 Ill. 269.

The Supreme Court of the United States in *Pumpelly v. Green Bay. Co.*, 13 Wall. 166, 20 L. Ed. 557, held that it is not necessary that property should be taken in the narrow sense of the word to bring the case within the protection of a statute or a constitutional provision that private property cannot be taken for public use without compensation. The court held in that case that there may be such a serious interruption to the common and necessary use of property as will be equivalent to a "taking." In that case the interruption to the common and necessary use of the property complained of was that the defendant had built a. dam across a river which formed the outlet of a lake by which dam the waters of the lake were raised so high as to overflow the land of plaintiff, and to tear up his trees and grass by the roots, and wash them with his hay thereon away, and to choke up the ditches on the land, and to saturate some of his land with water, and to dirty and injure other parts thereof by leaving thereon deposits of sand. The facts in that case do not establish a "taking" of the property in the narrow sense of the word. The injury sustained for which a recovery was sought in that action was a physical injury to the land. But we do not understand the court in holding that a recovery could be had therefor to limit the injury for which a recovery may be had to a physical injury where there is a "taking" of the property in the narrow sense of the word. On the other hand, the reasoning of the court in that case is that the test by which it may be determined whether there has been a "taking" is not the manner in which the injury was done, but whether one's common and necessary use of his property has been seriously interrupted.

Plaintiff in the case at bar, by virtue of its ownership of said lots, had the right of access over A street to the same. Such right is one peculiar to itself, in which the general public has no interest, and exists in the nature of an incorporeal hereditament attached to said lots, and is a valuable property right, one that,

under some circumstances, may constitute the greater element of value of the abutting property, and is one that cannot be taken away or materially impaired without compensation. Elliott on Railroads, par. 1085. In *Reining et al. v. New York & Lackawanna Ry. Co.*, 128 N. Y. 157, 28 N. E. 640, 14 L. R. A. 133, a case in which the plaintiff had built a railroad upon a street several feet high, with perpendicular walls, leaving a space of only about eight or nine feet for carriageway between said walls and the plaintiff's property, the New York Court of Appeals held that the owner's right of ingress and egress to and from such abutting property had been substantially closed against them for ordinary street purposes, and that they were entitled to recover. The right of the abutting property owner to access over the street adjacent to his property as an appurtenance to his property and to have such access protected from material obstruction has been recognized by many of the courts, and it has been held by such courts that an obstruction that materially injures or deprives the abutting property owner of ingress and egress to and from his property over the street is a "taking" of his property, for which recovery may be had. *Newport & Cincinnati Bridge Co. v. Foote*, 72 Ky. 265; *Parrot v. Cincinnati, Hamilton & Dayton Ry. Co.*, 10 Ohio St. 625 (in this latter case the obstruction was 20 feet from plaintiff's property); *Protzman v. Indianapolis & Cincinnati Ry. Co.*, 9 Ind. 467, 68 Am. Dec. 650; *C. B. U. P. Ry. Co. v. Twine*, 23 Kan. 585, 33 Am. Rep. 203; *Central Branch Union Pacific Ry. Co. v. Andrews*, 26 Kan. 702; *Chicago, Kansas & Western Ry. Co. v. Union Inv. Co.*, 51 Kan. 600, 33 Pac. 378; *Ft. Scott, Wichita & Western Ry. Co. v. Hugh Fox*, 42 Kan. 490, 22 Pac. 583; *Street Ry. Co. v. Cumminsville*, 14 Ohio St. 524; *Weatherford v. Commonwealth*, 73 Ky. 196; *Adams v. Chicago, B. & N. Ry. Co.*, 39 Minn. 286, 39 N. W. 629, 1 L. R. A. 493, 12 Am. St. Rep. 644; *Lamm v. Chicago, St. Paul, Minneapolis & Omaha Ry. Co.*, 45 Minn. 73, 47 N. W. 455. 10 L. R. A. 268; *Abendroth v. Manhattan Ry. Co.*, 122 N. Y. 1, 25 N. E. 496, 11 L. R. A. 634, 19 Am. St. Rep. 461.

The Supreme Court of the Territory of Oklahoma in the case of *Scrutchfield v. Choctaw, Oklahoma & Western Ry. Co.*, 18 Okla. 308, 88 Pac. 1048, 9 L. R. A. (N. S.) 496, recognizes, we think, the correct rule of law governing in cases similar to the case at bar. In the syllabus of that opinion the court says:

"The location and operation of a railroad upon a public highway may occasion incidental inconvenience and injury to an abutting landowner, but until it cuts off or materially interrupts his means of access to his property, or imposes some additional burden on his soil, his injury is the same in kind as that suffered by the community in general, and he cannot recover in an action therefor."

Mr. Justice Gillette, who delivered the opinion of the court, further said in the opinion:

"Every person has the same interest and right in a public street or thoroughfare that any other person has, except that property owners have a special right of ingress and egress to their property from the street, which right may not be taken from them without just compensation, because this is an injury peculiar to the particular property owners so affected."

If the evidence in this case fairly tended to show that the construction of defendant's railroad tracks in the street in front of plaintiff's property was such as to cut off or materially interrupt plaintiff's means of access to its property, such acts of the defendant amounted to a "taking" of plaintiff's property, for which defendant would be liable. The evidence establishes that the nearest track of the railway lies within 10 feet of plaintiff's property line, and, while there is no evidence as to the width of the sidewalk next to the property of plaintiff nearest the railway track, there is evidence that the space between said track and the property of plaintiff is too narrow for teams to go in and out. Since there was some evidence that plaintiff's means of ingress and egress to and from its property over A street had been materially interrupted, it was for the jury to find whether such right of plaintiff had been materially impaired.

It is suggested by defendant in error that the lumber com-

pany has a means of access to its property over Seventh street adjoining its property on the south. The decisions of the courts upon the right of the abutting property owner to recover where his access is obstructed on one street, but where he has a means of access from another street, are not uniform. Some courts have held both ways upon this proposition. In the case of *Kansas, Nebraska & Dakota Ry. Co. v. John Cuykendall*, 42 Kan. 234, 21 Pac. 1051, 16 Am. St. Rep. 479, the Supreme Court of Kansas held that where the abutting property owner's ingress and egress was obstructed on one street, but he had a means of access from another street, there was no right of recovery. In this opinion all the justices concurred. In the case of *Ft. Scott, Wichita & Western Ry. Co. v. Hugh Fox*, 42 Kan. 490, 22 Pac. 583, the same court held, all the justices concurring, that an abutting property owner is entitled to recover his damages for the permanent appropriation of the street in front of his property, although it is accessible from another street. We can see no reason that will justify the taking of one's special property right in one street because he may have a special property right in another street. If the plaintiff's property in this case is situated upon a corner of the block, and therefore adjacent to two streets, he has a right of ingress and egress to and from said property over both streets; and he who obstructs this access from one street and deprives the owner of the property of such property right cannot relieve himself of liability by pleading that the owner of the property may reach his property from another direction. The accessibility of one's property may in some instances constitute a great part of its value, and to permit a material impairment of his access would result in the destruction of a great part of the value of his property, and his property is therefore as effectually taken as if a physical invasion was made thereon and a physical injury done thereto.

There is some evidence tending reasonably to establish the material averments alleged in plaintiff's cause of action, and, if plaintiff had been permitted to prove its ownership of the prop-

erty, there was sufficient evidence to go to the jury, and the cause will be reversed and remanded.

Williams, C. J., and Dunn, and Kane, JJ., concur; Turner, J., concurs in the result.

## ON REHEARING.

Opinion Filed March 9, 1909. Former Opinion Adhered to.

HAYES, J. We are asked on rehearing in this case to reverse the opinion rendered by this court on the original hearing, for the reason that it conflicts with the following decisions of the Supreme Court of the United States: *Northern Transportation Company v. Chicago,* 99 U. S. 635; *Gibson v. United States,* 166 U. S. 269, and *Scranton v. Wheeler,* 179 U. S. 141. The decisions of the Supreme Court of the United States upon rules of law were controlling upon the courts of the territory of Oklahoma at the time this case originated and was tried in the lower court, and if the decisions of that court above cited are applicable to the case at bar and the opinion heretofore rendered by us is in conflict with them, then our former opinion should be reversed and the judgment of the trial court affirmed.

In *Northern Transportation Co. v. Chicago, supra,* the damages sustained by the abutting property owner resulted from the construction by the agents of the city of a tunnel along one of its streets under the Chicago river where the river crossed said street. In the construction of the tunnel the city authorities materially obstructed the abutting property owner's access to his property from the street and his access to the river which his property adjoined. The court held that for this obstruction to his access the law afforded him no remedy, for the reason that such obstruction, caused by the act of the city in making public improvements, was not a taking of private property for public use.

In the cases of *Gibson v. United States* and *Scranton v. Wheeler, supra,* the interference with the riparian owner's access to the navigable waters resulted from public improvements made by the government or its agents. In each of these cases the improvements were made by the government solely for public use, and the effect of the opinions of the court in these cases is that the private right of the riparian owner to access to the navigable stream which his land adjoins is subordinate to the public right; that such right of access is subservient to the public right of navigation and the control of Congress over that right, and that if an injury occurs to his means of access by public improvements made by Congress in the exercise of its right to improve navigable streams, no violation of any right to him occurs, for the reason that such right of access ceases the moment it comes in conflict with the rights of the government to control navigable streams. But none of these decisions hold that the abutting owner's right of access is subordinate to the right of a railway company which constructs a steam railway upon a street under legislative authority, and, although this case has been re-argued upon rehearing and ably and exhaustively re-briefed by counsel, no decision of the Supreme Court of the United States in which it has been held that the abutting owner's access to his property may be destroyed in such manner without compensation has been called to our attention, in which that court was uncontrolled by a rule of property of a state court, and we think none exists.

There are decisions, however, from that court which follow the rule of property of state courts and hold that damages cannot be recovered where the construction of the railroad interferes with the access of the abutting owner where the title to the street is in the public. *Meyer v. Richmond,* 172 U. S. 82, is one of such cases. That case arose in the courts of Virginia and was an action for damages resulting from the obstruction of an abutting owner's access to a street by a railroad built upon the street, not in front of the abutting property, but across the street to the north of it. The Supreme Court of Appeals of Virginia held

that such obstruction was not a taking under the constitution and laws of Virginia, and this construction by the court of that state of the Constitution and laws of that state was as to the Supreme Court of the United States a rule of property which that court did not undertake to review. Mr. Justice McKenna, who delivered the opinion of the court, uses the following language:

"The substantial thing is not that one may be damaged by an obstruction in a street,—not that one may be specially damaged beyond others,—but is such damage a deprivation of property, within the meaning of the constitutional provision? According to the Virginia cases, an additional servitude may be said to be another physical appropriation, and hence another taking, and must be compensated. But the plaintiff's case is not within this doctrine, nor is there anything in the decisions of Virginia which make consequential damages to property a taking, within the meaning of the Constitution of that state. Decisions in other states we need not resort to or review. Those of this court furnish a sufficient guide. *Transportation Co. v. Chicago.* 99 U. S. 635; *City of Chicago v. Taylor,* 125 U. S. 161; *Marchant v. Railroad Co.,* 153 U. S. 380; *Gibson v. United States,* 166 U. S. 269."

If the language quoted referring to other cases of the Supreme Court of the United States can be construed as an expression that the rule of that court in those cases is in harmony with the court of Virginia in holding that the obstruction to the access of the abutting owner is not a taking, then we have an expression of the Supreme Court of the United States which appears to indicate that the cases of *Northern Transportation Co. v. Chicago* and *Gibson v. United States* establish the rule contended for by defendant · in error in this case; but our construction of the language used by the court is that the intention of the court in referring to those decisions was not to indicate that the rule of property adopted by the Supreme Court of Appeals of Virginia was supported by those decisions, but that the Supreme Court of Appeals of Virginia having held that the abutting owner had no right of access in the street which constituted property which could be taken in the manner complained of, then such damages as were sustained by the abutting owner were consequential dam-

ages, and that the cases cited support the rule that consequential damages do not constitute a taking of property. In discussing this question, in one of the cases referred to, the court said:

"The first proposition asserted by the plaintiff, that her private property has been taken from her without just compensation having been first made or secured, involves certain questions of fact. Was the plaintiff the owner of private property, and was such property taken, injured, or destroyed by a corporation invested with the privileges of taking private property for public use? The title of the plaintiff to the property affected was not disputed, nor that the railroad company was a corporation invested with the privilege of taking private property for public use. But it was adjudged by the Supreme Court of Pennsylvania that the acts of the defendant which were complained of did not, under the laws and Constitution of that state, constitute a taking, an injury, or a destruction of the plaintiff's property. We are not authorized to inquire into the grounds and reasons upon which the Supreme Court of Pennsylvania proceeded in its construction of the statutes and Constitution of that state, and if this record presented no other question except errors alleged to have been committed by that court in its construction of its domestic laws, we should be obliged to hold, as has been often held in like cases, that we have no jurisdiction to review the judgment of the state court, and we should have to dismiss this writ of error for that reason."

In determining, therefore, whether there is a difference between the abutting owner's right of access as against a railway corporation constructing its railroad upon the street under legislative authority and between such abutting owner's rights and the right of the public or of the government to improve the street for public purposes, we are compelled to resort to reason and decisions of the state courts for answer.

It is the doctrine of the courts of nearly all the states that an abutting property owner cannot recover for damages to his property resulting from change of grade in the street made by the municipal authorities under authority of law where there is no physical injury to his property. His right in the street is subject to the right of the public to grade and improve it for public

highway, and the injury he sustains therefrom is not a taking. And this doctrine prevails whether the fee is in the abutting owner or in the public. Section 96, vol. 1 (2nd Ed.) Lewis' Eminent Domain; *Sauer v. City of New York*, 206 U. S. 536.

Two classes of cases have arisen in the courts under statutory or constitutional provisions similar to the one now under consideration. The first class consists of those cases where the title to the street was in the abutting owner, and the second class consists of those cases where the title to the street was in the public. There are some cases that hold that an abutting owner who owns the title to the street cannot recover the damages he sustains from the building of a railroad on the street in front of his property where it is built under legislative authority. *Parry v. New Orleans M. & C. R. R. Co.*, 55 Ala., 413; *Mercer v. Pittsburgh, Ft. W. & C. R. R. Co.*, 36 Pa. St. 340; *Snyder v. Pennsylvania R. R. Co.*, 55 Pa. St. 340. But the doctrine of these cases is against the weight of authority. Section 115, vol. 1 (2nd Ed.) Lewis' Eminent Domain. The reasoning of the courts upon which they have established the general rule that where the fee is in the abutting owner there is a taking is not uniform. Many of the courts place it upon the ground that the location of the track of a railroad upon a street is an additional burden and servitude upon the owner's land for which he is entitled to additional compensation. Other courts place it upon the ground that it is an exclusive appropriation by the railroad company of the soil of the street to its own use, and that, since the owner of the title has the right of use of the soil for all purposes not inconsistent with the easement in favor of the public, the act of the railroad company in placing its tracks upon the street is a taking, and compensation is allowed. But the courts, upon whichever ground they place the right of recovery, as a rule permit the recovery, not only for the additional burden or servitude upon the land of the abutting owner in the street or for the taking from him the use of the soil of the street to which he has the right to use except so far as it is in conflict with the right of the public, but to recover also

for depreciation in the value of his abutting property. We do not, however, refer to this class of cases to discuss the reasoning upon which the courts have permitted abutting .property owners to recover, but that it may be noticed that the decided weight of authorities, where the abutting property owner owns the fee to the street, makes a distinction between his right of ingress and egress over the street as against the public and his right therein as against a railway company building upon the streets under authority of law. His right as to the public is a subservient right,, but as to the railway company it is a superior right, which may not be materially interfered with or destroyed without compensation. There is, however, great conflict among the decisions of the second class to which the case at bar belongs, and in some instances the decisions of the same court are irreconcilable. In some of the states, the rights of the abutting owner in the street, the title to which is in the public, are regarded as of the same degree as those of the public and no recovery is permitted for interfering with his right of egress and ingress over the street to his property where such interference occurs from the construction of a railroad upon the street under legislative authority; but the doctrine of the courts in all the following cases is sufficiently broad to permit a recovery where the abutting property owner's access to the street is destroyed or materially obstructed or interfered with: *Reining v. New York, L. & W. Ry. Co.*, 128 N. Y. 157; *The Leavenworth, Northern & Southern Ry. Co. v. Curtain et al.*, 51 Kan. 432; *Atchison, etc., Ry. Co. v. Davidson*, 52 Kan. 739; *Williamette Iron Works v. Oregon Ry. Co.*, 26 Oregon, 224; *White v. Railroad Co.*, 113 N. C. 610; *Adams v. Chicago, B. & N. R. Co.*, 39 Minn. 286; *Lamm v. Chicago, St. P., M. & O. Ry. Co.*, 54 Minn. 71; *The Ft. Scott, W. & W. Ry. Co. v. Fox*, 42 Kan. 490; *Central Branch U. P. Ry. Co. v Twine*, 23 Kan 415; *The South Carolina Ry. Co. v. Steiner et al.*, 44 Ga. 546; *Egerer v. The New York Central & Hudson R. Ry. Co.*, 130 N. Y. 108; *The Burlington & Missouri River Ry. Co. v. Reinhackle*, 15 Neb. 279; *Callen v. Electric Light Co.*, 66 Ohio St. 166; *Theobold v. L., N. O. & T. Ry.*

*Co.,* 66 Miss. 285; *The Indiana, B. & W. Ry. Co. v. Eberle,* 110 Ind. 542; *Pittsburgh, C. C. & St. L. Ry. Co. v. Noftsger,* 148 Ind. 101. There are other cases which support or recognize the doctrine of these cases, but it is unnecessary to prolong this opinion by citing them or quoting therefrom.

The cases cited are cases that arose under statutes or constitutional provisions providing that private property shall not be "taken" for public purpose without compensation. In some of the states, subsequent to the decisions cited, statutes have been enacted or constitutional provisions adopted which extend the terms of the statutes or constitutional provisions theretofore existing by providing that private property shall not be "taken, damaged or injured" for public purposes without compensation. The decisions of the courts under these statutes or Constitution as amended are not applicable to the case at bar. The reasoning upon which the courts have permitted the abutting owner to recover when his access to his property has been materially interfered with is by no means uniform. Some of them do not place it upon the ground that there has been a taking of property, but that his right has been interfered with. In some of the states the rule is broader than in others. In some the building of the road upon the street entitles the abutting property owner to recover although the road is built upon the grade of the street; in others no right of recovery exists unless the construction of the railroad upon the street is such as to interfere with his right of access to his property; and in others there is no right of recovery unless the abutting owner's access has been entirely destroyed.

In *Reining v. New York, Lackawanna & Western Ry. Co., supra,* the abutting owner recovered damages resulting from the railroad company's constructing an embankment upon the street in front of his property on which the company placed its railroad tracks. The Court of Appeals of New York said:

"It is no longer open to debate in this state that owners of

lots abutting on a city street, the fee of which is in the municipality for street uses, although they have no title to the soil, are nevertheless entitled to the benefit of the street in front of their premises for access and other purposes, of which they cannot be deprived except upon compensation. The right of abutting owners in the streets is not, however, of that absolute character that they can resist or prevent any and all interference with the street to their detriment, or which can be asserted to stay the hand of the municipality in the control, regulation or improvement of the streets in the public interest although it may be made to appear that the privileges which they had theretofore enjoyed and the benefits they had derived from the street in its existing condition, would be curtailed or impaired to their injury by the changes proposed."

The right of the abutting owner to have free access over the street to his property and the relation of such right to the right of the public to make public improvements upon the street and to the right of agencies acting under legislative authority, in making improvements on the street other than for the purpose of a highway or street uses, is well expressed in Lewis' Eminent Domain, vol. 1, (sec. 91) p. 172, in the following language:

"But as all streets are established primarily for the public use and general good, the right of the public is paramount to the right of the individual. And so the private rights of access, light, and air are held and enjoyed subject to the paramount right of the public to use and improve the street for the purposes of a highway. And, as these private rights are thus subject to the right of the public to use and improve as a highway, it follows that, when such uses or improvements are made, no private right is interfered with, and consequently no private property is taken. It follows also that, as these private rights are subject only to the use and improvement of the street by the public for the purpose of a highway, an interference with these rights by the use or improvement of the street for any other purpose or by any other agency, under legislative authority, is a taking of private property to the extent of such interference."

The three cases from the Supreme Court of the United States relied upon by defendant in error in its petition for rehearing

which have been referred to *supra* are cases in which the riparian owner's access to the navigable stream or the abutting property owner's access to the adjoining street were interfered with by improvements made by the public and for the purpose of improving either the navigable stream or the street as a highway. The same author in the sentence preceding the above quotation says:

"Numerous cases, decided since the first edition of this work, establish beyond question the existence of these rights, or easements, of light, air and access, as appurtenant to abutting lots, and that they are as much property as the lots themselves."

This language is quoted with approval by the Supreme Court of the United States in *Muhlker v. Harlem Railroad Co.*, 197 U. S. 544. That case, as well as others announcing the doctrine, is often referred to as the Elevated Railroad Cases, and supports the doctrine that the abutting owner's easement of light and air may not be interfered with by the construction of an elevated railroad in the street in front of his property under legislative authority without compensation. Able counsel for defendant in error contend that the rule in this class of cases is not applicable to the case at bar, and we are aware that there are expressions from some of the courts that such is the case, but to our minds it is mockery to say that a railway company, acting under legislative authority, may not take away or interfere with the abutting owner's easements of light and air without compensation, but that the same company may, without compensation to the abutting owner, construct upon the street in front of his property obstructions that destroy or materially interfere with his access to his property, the very means by which he may enjoy the other easements which the court holds the law protects him in the enjoyment of from the interference of such railway company or other agencies acting under legislative authority.

On this subject Mr. Lewis in his work on Eminent Domain, vol. 1, p. 233, says:

"Highways are established to accommodate the public in traveling from place to place. From time immemorial, prior to

the discovery of steam, they were for the common use of every citizen, by any means of locomotion he chose to select. They were not used by one person in any way which was not open to all. No one had a private right or any exclusive privilege therein. It was free to all upon like conditions. Such being the character of the public highway, it was subject to use by any new means of locomotion which could be employed by all the public, and was not destructive of the old methods of travel. A carriage propelled upon the ordinary surface of the road by steam or electricity would be just as legitimate as a carriage drawn by horses. Such use would be equally open to every citizen. The railroad does not fall within the scope of such uses. It requires a permanent structure in the street, the use of which is private and exclusive. It gives to an individual or corporation a franchise and easement in the street, inconsistent with the public right. To hold that a railroad is one of the proper and legitimate uses of a street leads to the absurd consequence that a street might be filled with parallel tracks which would practically exclude all ordinary travel and still be devoted to the ordinary uses of a highway."

The fee in the street in the case at bar is in the public for street uses, and, upon a vacation of said street, the same would become the property of plaintiff. *Blackwell, Enid & S. W. Ry. Co. v. Gist*, 18 Okla. 516. The construction of a steam railway upon the street, although a public use, and made by a private corporation engaged in a public service, is not a legitimate street use. It is true that the legislative department of a state may grant to a steam railway company the right to construct its tracks upon the streets of a city, or, as in this case, a municipality, under authority from the legislature, may grant such right, but such authority granted relieves the company only from liability to suits civil and criminal by the public, and does not authorize it to interfere with any of the private property rights of the abutting owners. It has only the effect to make that legitimate which would otherwise be a nuisance and actionable as such. If railway tracks are constructed under legislative authority upon the surface of the street at the grade thereof and the abutting owner's means of access are not materially interfered with, he cannot complain; but if, as in this

case where five tracks of railroad have been constructed in the street in front of plaintiff's property, the nearest of which is so near the property line of plaintiff that teams cannot pass each other and so constructed, according to the testimony of one witness, as to render it almost impossible for plaintiff's lumber yard upon its property to be reached by vehicles, the railway is so constructed as to destroy or materially interfere with the abutting owner's means of ingress and egress to and from his lot, and the value thereof is destroyed or depreciated from such cause, its property is as effectually taken as if a physical invasion had been made.

We cannot say that the conclusion here reached is, numerically speaking, supported by the weight of the decisions from the state courts, but in the absence of any decision from the Supreme Court of the United States directly upon the question here involved, which, if it existed, we should feel it our duty to follow as controlling in this case, we are constrained to adopt that construction and follow that rule which to us appears to be supported by the best reasoning and that will best serve the purposes of justice. We therefore adhere to our former opinion.

Kane, C. J., Williams and Dunn, JJ., concur; Turner, J., concurs in result.