# NOBLE & CARMODY v. HUDSON.
## (No. 656.)

PARTNERSHIP—ACTION—PARTIES—ACTION IN FIRM NAME—TRESPASS
UPON GRAZING LAND—EVIDENCE—PLEADING AND PROOF—POSSES-
SION—EQUITABLE OWNER.

1. Under section 4329, Compiled Statutes, 1910, providing that a partnership formed for the purpose of carrying on trade or business within the state, or holding property therein, may sue or be sued by the partnership name, without alleging or proving the names of the individual members thereof, a partnership engaged in the sheep business within the state, having been formed for that purpose, may sue in the partnership name for trespass upon its land.

2. Where land was leased for a partnership engaged in the sheep business, but the lease was made to only two of the partners as composing the partnership. *Held,* in an action brought in the firm name for trespass upon the leased land, that it was error to exclude the lease when offered in evidence by the plaintiff because the other members of the firm were not named therein.

3. In an action by a partnership in the partnership name for trespass on its leased land, evidence of one of the partners that the land was leased for the benefit of the partnership, the rent paid by the partnership, and that the firm was in possession at the time of the trespass was admissible, though the lease mentioned only two of the persons interested in the partnership as members thereof.

4. The gist of an action of trespass is injury to possession, and the plaintiff must either show possession or the right to immediate possession at the time of the trespass; it being necessary that plaintiff have had actual or constructive possession.

5. Possession alone is sufficient to maintain the action of trespass against one having no better title, and where there is actual possession it is not necessary to show any other or better title against a mere wrong doer.

6. Where, in an action of trespass, the plaintiff's actual possession is admitted or proven, a mere intruder cannot require the plaintiff to prove his title or right to possession, even though the plaintiff may have alleged that he was the owner as well as in possession of the property.

7. In an action of trespass, where the plaintiff did not have actual possession, he may recover by showing a title sufficient to give him constructive possession.

8. An equitable owner or beneficiary in the use of property may maintain trespass.

9. In an action for trespass on land used for grazing, the fact that the land was not fenced or that the corners were not marked by posts or stakes will not authorize the court to say as a matter of law that actual possession was not established.

10. In an action for trespass upon land leased by a partnership for grazing where the lease, although naming the firm, named but two of the persons as composing the firm, it was improper to strike out testimony showing the possession of the partnership on the ground that the plaintiff had not shown a title conferring the right of possession.

11. In an action brought in the name of a partnership for trespass upon land leased for its benefit, the evidence as to the actual possession of the partnership *held* sufficient to require its submission to the jury; and, though all the members of the partnership were not named in the lease, the plaintiff might recover upon proof of actual possession, the defendant having no better title, it being also proven that the defendant had trespassed upon the land as alleged in the petition.

12. In an action brought in the name of a partnership for trespass upon leased land, the fact that the lease was in writing did not make the proof of the circumstances under which it was taken and held incompetent, and it was proper for the plaintiff to show that the land was leased for the sole and exclusive use and benefit of the plaintiff partnership, and that the partnership had paid the rent and had possession, although the lease purported to be made to but two of the several partners as composing the firm; and after such showing, if not before, the lease would be admissible in evidence.

[Decided April 13, 1912.]                    (122 Pac. 901.)

ERROR to the District Court, Fremont County; HON. CHARLES E. CARPENTER, JUDGE.

The action was for trespass and was brought by Noble & Carmody, a partnership, in the partnership name, against Frank L. Hudson. From a judgment for the defendant the

plaintiff brought error. The material facts are stated in the opinion.

*D. A. Preston* and *M. C. Brown,* for plaintiff in error.

The action was properly brought in the partnership name, without stating the individual names of the partners. (Comp. Stat. 1910, sec. 4329.) The court improperly excluded the evidence offered by the plaintiff to show that the land was leased for its benefit and that it was in possession and had paid the rent. Even upon the evidence which was not excluded the court improperly directed a verdict for the defendant. (Thompson on Trials, sec. 2248; Bray v. Garcelon, 17 Me. 145; Head v. Sleeper, 20 Me. 314; Denny v. Williams, 5 Allen, 1; Kahn v. Ins. Co., 4 Wyo. 419; Boswell v. Bank, 16 Wyo. 161; McDonald v. Ry. Co., 167 N. Y. 66; O'Brian v. R. Co., 102 Wis. 628.)

*Stone & Winslow,* for defendant in error.

As to the lands claimed to have been leased to the plaintiff from one Earle, the plaintiff wholly failed to establish its title or right of possession, and the court properly excluded all the evidence relating to those lands. There is no contention as to the title or right of possession in the plaintiff as to the other lands described in the petition, but there is no evidence upon which a verdict against the defendant could have been returned as to those lands. The lease was properly excluded, it appearing from the testimony that others than those named in the lease were members of the plaintiff partnership. No exception was taken to the ruling excluding the lease. The action was no doubt properly brought in the firm name, but the averment that the lands were leased to the plaintiff was not sustained by proof of the lease which named only two of the five members of the firm. The question is not one of defect of parties, but one of identity, viz: whether or not the partnership of John Carmody and Fred F. Noble, co-partners, could be held to be the same person or party, and identical with the plaintiff Noble & Carmody, a partnership composed of five persons.

They are not identical. (22 Ency. Law, (2nd Ed.) 76;
Newman v. Eldridge, 107 La. 315, 31 So. 688.) No attempt
was made to show a wilful or intentional driving of de-
fendant's sheep upon the lands of the plaintiff, and there-
fore a sufficient trespass to support the action was not es-
tablished. (Haskins v. Andrews, 12 Wyo. 458; Painter v.
Stahley, 15 Wyo. 510.) If the evidence produced by a
party is insufficient in law to authorize a finding in his favor,
it is the right and duty of the court to so hold, and peremp-
torily instruct for the other party. (Boswell v. Bank, 16
Wyo. 161.)

POTTER, JUSTICE.

This is a suit brought to recover damages for an alleged
trespass upon lands described in the petition. The trial
court directed a verdict for the defendant, and the case is
here on error. The suit was brought by Noble & Carmody,
a partnership, in the firm name, as authorized by section
4329, Compiled Statutes (R. S. 1899, sec. 3485), which pro-
vides that a partnership formed for the purpose of carrying
on trade or business in this state, or holding property therein,
may sue or be sued by the partnership name, without al-
leging or proving the names of the individual members
thereof.

It is alleged that the trespass was committed on or about
June 1, 1907, and thence continuously during the months of
June, July and August, 1907, and that the defendant, "with
force and arms broke and entered upon the premises,
* * * trod down and trampled upon and spoiled the
grasses and herbage of the plaintiff then and there being,
and with live stock, to-wit: more than two thousand head
of sheep depastured the grasses and herbage of the plaintiff
then and there growing," of the value of more than two
thousand dollars, to the damage of the plaintiff in that
amount. There is a further allegation of injury and dam-
age to the effect that the sheep of defendant by reason of the
alleged trespass became mixed with the sheep of plaintiff,
whereby the plaintiff was damaged in the sum of $2,000.

It is alleged in the petition that some of the lands therein described, and referred to in the evidence as the Earle lands, were leased to the plaintiff, for a valuable consideration, by Edson A. Earle on or about September 24, 1906, for the term of one year from October 1, 1906; and that from said last mentioned date until October 1, 1907, the plaintiff was in possession and entitled to the possession of all of said lands, and to the use of all the grasses and herbage growing thereon, and the use of the water thereon. The other lands described in the petition are alleged to have been leased by the State to one Kime in 1903 for the term of five years by a lease which was assigned to one Jennie Carmody by Kime in 1905; and it is alleged that said Jennie Carmody under-let said lands to the plaintiff for and during the year 1907, and that the plaintiff during all of that year was in possession and entitled to the possession thereof, and to the use of all the grasses and herbage growing thereon, and the use of the water thereon. The answer is a general denial.

The only points we think necessary to consider relate to the Earle lands. The court excluded from the evidence the written lease of those lands, and sustained a motion of defendant's counsel to strike out all of the testimony relating to such lands, and also an objection to an offer made by plaintiff's counsel to prove by John Carmody, the principal witness for the plaintiff then on the stand, that the lands described in said written lease were leased by the plaintiff from Edson A. Earle for the sole and exclusive use of the plaintiff, Noble & Carmody, upon which to graze their herds, and that in pursuance thereof the plaintiff, Noble & Carmody, had possession of said lands for that purpose in 1907, and paid the rent therefor, two hundred dollars. Upon the face of the lease aforesaid it appeared to have been made by Edson A. Earle to "Fred F. Noble and John Carmody, co-partners, doing business under the firm name of Noble & Carmody," for the term of one year from October 1, 1906, in consideration of the acknowledged payment of two hundred dollars, and it covered the lands alleged in the peti-

tion to have been leased to the plaintiff by said Earle. It was identified by the witness, Carmody, as the lease for the lands under which the plaintiff partnership had possession and claimed the right of possession. Before the lease was offered in evidence, and after said witness had testified that Noble & Carmody, the plaintiff, had possession of the lands therein described at the time of the alleged trespass, he stated in answer to questions propounded by defendant's counsel during the progress of his direct examination that three persons not mentioned in the lease, in addition to those named therein as lessees, were members of and interested in the partnership of Noble & Carmody.

The admission of the lease in evidence was objected to on the ground that it was not made to the parties in the case. And upon substantially the same ground the testimony referring to the Earle lands was stricken out, and the offer of proof excluded. The rulings of the court rejecting the lease and offer of proof relating to the Earle lands, and striking out the testimony referring thereto, are assigned as error. The ruling sustaining the objection to the admission of the lease in evidence was not excepted to, and it was not again offered. For that reason it is contended by counsel for defendant that the plaintiff is not now in a position to complain of any of said rulings. The testimony stricken out included that of the witness Carmody stating that the plaintiff had possession of the lands at the time of the alleged trespass, and relating the transaction concerning the lease. His testimony as to that transaction was given upon cross-examination in answer to a question inquiring how he got possession and the right to posession, and was as follows:

"In the fall of 1906, I bought all of the sheep that Mr. Earle had left. At the time I bought the sheep I asked him if he would lease me what range lands he had. He said he would. I said, 'What do you ask for them?' He said, 'Two hundred dollars,' and so I said, 'All right.' When I paid him for the sheep I included the two hundred dollars in the check. When I paid for the sheep he said, 'When I

come down I will make you out a lease.' And he did." On
re-direct examination he testified that he bought the sheep
for the plaintiff, Noble & Carmody, and when a question
was propounded stating that counsel understood him to say
that he had leased the lands for Noble & Carmody, he ex-
plained: "I said that after I had bought the sheep I asked
Mr. Earle if he would lease me his range lands, and he said
he would. Ever since we have entered into the sheep busi-
ness I have done all of the business and attended to it in
every way, and I have got into the habit of saying 'I' instead
of 'we,' because there is no one else does any business for
Noble & Carmody; and with that understanding I don't
want to be tripped up on that word."

After the witness had stated during his cross-examination
that the lease under which the plaintiff had possession and
claimed the right of possession was the one he had pre-
viously identified, that lease, which was then in the case
only as a paper marked for identification, was handed to
him by defendant's counsel and he was asked to look at it
and state who were the parties to the lease according to its
terms. He did so, and thereupon said counsel moved to
strike out all the testimony referring to the lands covered
by such lease, for the reason that other persons not named
in the lease were shown by the evidence to have been mem-
bers of the plaintiff partnership, and that such testimony in
reference to possession was, therefore, incompetent, irrel-
evant and immaterial, and not the best evidence. The mo-
tion was sustained, and the ruling excepted to by counsel for
plaintiff. Thus the court appears to have held that because
the written lease named as lessees only two of the members
of the partnership, it was incompetent as proof of a right
of possession in the plaintiff, and also that it prevented the
plaintiff from proving that the partnership had actual pos-
session of the lands described in the lease.

Plaintiff's counsel then offered to prove that the plaintiff
leased the lands from Earle for their sole and exclusive use
for the grazing of their herds and paid the rent therefor.

The court remarked that they might prove that. But when the witness was asked for what purpose the lands were leased, an objection to the question was sustained. An exception was noted to that ruling. The court stated: "You will have to introduce the lease. That is the only way you can prove title. If it is in writing it is the best evidence." The court then asked the witness if the lease was in writing, and he answered that it was typewritten. A motion was thereupon sustained striking out the testimony of the witness to the effect that the plaintiff had leased the lands from Edson A. Earle. Plaintiff's counsel again offered to prove "by the witness Carmody that the lands described in the written Earle lease were leased from Edson A. Earle by the plaintiffs, Noble & Carmody, for the sole and exclusive use of the plaintiffs, Noble & Carmody, upon which to graze their herds; and that, in pursuance thereof, the plaintiffs, Noble & Carmody, had possession of said lands for that purpose in 1907 and paid the rent therefor." An objection to the offer was sustained and an exception was taken to that ruling. We quote the objection: "Objected to as incompetent, irrelevant and immaterial; no proper foundation laid and not the best evidence, the testimony showing at this time that the lease referred to was in writing; and the record showing that said written lease has been offered in evidence, objected to by defendant, and the objection sustained by the court; and not tending to support the issues raised in this case under the pleadings, and it appearing affirmatively on the face of said lease that the plaintiff in this action was not a party thereto." The evidence above related, excepting that the plaintiff had possession of the lands, was given after the lease had been offered and excluded. Before the lease was offered the witness testified that Noble & Carmody had possession of the Earle lands, and he testified again to that fact after the court had refused to admit the lease in evidence.

It was evidently intended by the question inquiring as to the purpose for which the lands were leased to show that

they were leased for the sole and exclusive use of the plaintiff for the grazing of their herds. We think that intention is fairly disclosed by the offer which followed the ruling sustaining the objection as well as by the similar offer previously made. Counsel for both parties seem to have understood that the court ruled in effect that it was not permissible for the plaintiff to show that the lease which was made to two members of the partnership only was in fact obtained and held for the use and benefit of the partnership itself. And that, we think, is the only reasonable interpretation of the rulings with reference to this matter. By striking out the testimony showing that the plaintiff had possession of the lands the court seems also to have held it necessary to show a lease or title sufficient to give the plaintiff a right to the possession. We think that in these rulings the court erred, and that the exceptions are sufficient to raise the question here. It is true that there was no exception taken to the exclusion of the lease when it was offered in evidence. But the attention of the witness Carmody was subsequently called to the lease by defendant's counsel, as above stated, and he read therefrom the names of the parties therein mentioned as lessor and lessees. The fact that it covered the lands described in the petition as the lands which had been leased from Earle was not questioned, and from the lease which is in the record here as a paper marked for identification it appears that it did cover those lands. The defendant's objection to the lease and to any proof of possession of the lands by the plaintiff was based solely upon the fact that all the members of the firm were not named in the written lease as lessees. And upon the ground that such a lease existed and was in writing the court rejected the offer to prove that the lands had been leased by the plaintiff for the sole and exclusive use of the partnership, that the partnership had paid the rent and had possession of the lands, and also struck out all the evidence which had been admitted showing that the plaintiff had possession. The rulings rejecting such offer and striking out the evidence

referred to and also the ruling sustaining the objection concerning the purpose for which the lands were leased were excepted to, and the question is, therefore, here for consideration whether the plaintiff should have been permitted to show that the lands were leased for the sole and exclusive use of the plaintiff partnership, and that the partnership had paid the rent and had possession.

The gist of the action of trespass is injury to possession, and the plaintiff must show either possession or a right to take immediate possession at the time of the trespass. In other words, the plaintiff must have had actual or constructive possession. Possession alone is sufficient to maintain the action against one having no better title, and where there is actual possession it is not necessary to show any other or better title against a mere wrongdoer. Where the plaintiff's actual possession is admitted or proven, a mere intruder cannot require the plaintiff to prove his title or right to possession; and this is so although the plaintiff may have alleged that he was the owner as well as in possession of the property. Where the plaintiff did not have actual possession he may recover by showing a title sufficient to give him constructive possession of the land. (28 Am. & Eng. Ency. Law, 552, 573; 38 Cyc. 1004, 1005, 1017-1020; Illinois &c. Co. v. Cobb, 94 Ill. 55; Prussner v. Brady, 136 Ill. App. 395; Mallett v. White, 52 Conn. 50; Clay v. St. Albans, 43 W. Va. 539, 27 S. E. 368, 64 Am. St. 883; Chicago &c. R. Co. v. McPhillamey, 118 Pac. 682; Gustin v. Harting, 121 Pac. 522.)

It was well said in Illinois &c. Co. v. Cobb, supra: "Being in possession the law presumes him to be the owner, and will not permit a wrongdoer to question or call upon him to produce his title to sustain his action. * * * * * To hold that a wrongdoer may put a plaintiff in peaceable possession upon the proof of title, to enable him to a recovery, would be a harsh rule. If there should be any technical objection to any link in his chain of title he would fail, although no other person was claiming title and might never

claim. * * * * * The wrongdoer should in justice make
recompense to some one for the wrong and loss he has in-
flicted upon the property, and no reason is perceived why
he should have a choice as to whom he will pay the dam-
ages. A recovery by the occupant is a bar to all future
recoveries, and it in nowise concerns him who shall have the
benefit of that recovery." And it was said in Prussner v.
Brady, supra: "Appellants urge that the general issue put
upon appellee proof of title of the premises invaded. This
is not true. It only called for proof of possession."

It is said that "one having the equitable title, with full
right to call for the legal title, may maintain trespass." (28
Am. & Eng. Ency. L. 580.) And many decisions in this
country so hold, especially where the holder of the equitable
title is shown to have had the right of possession, as where
a deed is made to one for the sole use and benefit of another.
In such a case the right of the equitable owner or beneficiary
to maintain the action cannot, we think, be reasonably de-
nied, and it is sustained by many well considered cases. Of
course, if such equitable owner or the one for whose use and
benefit a conveyance is taken has actual possession of the
premises there can be no question as to the right to maintain
the action, at least for such an injury as is here alleged.
(Clay v. St. Albans, supra; Morse v. Iman, 42 Ill. 150, 89
Am. Dec. 417; Dexter v. Billings, 110 Pa. St. 135, 1 Atl.
180; McCarty v. Gray, 95 Ill. App. 559; Bulliss v. C. M. &
St. P. Ry. Co., 76 Ia. 680, 39 N. W. 245; Albin v. Lord,
39 N. H. 196; Frisbee v. Marshall, 122 N. C. 760, 30 S. E.
21; Brown v. Benjamin, 8 Allen (Mass.) 197; Cox v.
Walker, 26 Me. 504; Gartner v. Chicago &c. R. Co., 71
Neb. 444, 98 N. W. 1052; Mallett v. White, supra; Foster
Lumber Co. v. Arkansas &c. R. Co., 20 Okla. 593, 95 Pac.
224, 100 Pac. 1100, 30 L. R. A. (N. S.) 231; Russell v.
Meyer, 7 N. Dak. 335, 75 N. W. 262, 47 L. R. A. 637.)

The facts in the case at bar are substantially the same as
in Painter & Co. v. Stahley Bros., 15 Wyo. 510, 90 Pac. 375.
The only difference is that in that case it was alleged that

the lease was held in the name of one of the partners for the use and benefit of the firm. It was contended in that case that the plaintiff could not recover and that the action could be maintained only by the individual lessee. Answering that contention this court said: "It is clear, however, that neither by the petition nor upon the evidence was a recovery sought for an injury other than that affecting the plaintiff's right to possession or its rights as a tenant under the lease. Though the lease was taken in the name of a member of the firm, it was alleged in the petition, and proven by uncontradicted evidence that the lease was taken and held for the sole and exclusive use and benefit of the firm. The injury alleged was the destruction of the pasturage upon the land for the year 1904, the period covered by the lease; and the only damage sought to be proven was that suffered by the plaintiff as tenant for the year in relation to its right to the use of the pasturage. Upon proof of such an injury under circumstances sufficient to charge the defendant with liability the plaintiff would be entitled to recover." The difference between the allegations of the petition in that case and the one at bar is not material. Under the averment that the lands had been leased to the plaintiff it was competent to show that the lease, though taken in the names of two members of the partnership, was in fact taken and held for the sole and exclusive use of the partnership and that the partnership paid the rent for the premises. This would not have constituted a material variance. Clearly it would not be a material variance upon a showing that the plaintiff had actual possession, for mere possession is sufficient to support the action and possession is alleged. The averment that the land had been leased to the plaintiff might then be treated as surplusage. And if it became necessary to establish constructive possession by a title giving the plaintiff a right to the immediate possession, we do not think that proof of the lease aforesaid and that it was taken for the sole and exclusive use of the plaintiff who paid the rent would be a material variance, for that

would show that the lease was partnership property (Mitchell v. Read, 84 N. Y. 556; Riddle v. Whitehill, 135 U. S. 621, 10 Sup. Ct. 924, 34 L. Ed. 282), and that the plaintiff partnership was in fact the tenant, at least as against a stranger. The lease discloses upon its face that the partnership was intended as lessee, since it describes the individuals therein named as co-partners doing business under the firm name of Noble & Carmody; and it appears to have been endorsed as follows: "Lease. Edson A. Earle to Noble & Carmody." In Clay v. St. Albans, supra, the suit was brought by a husband and wife jointly for permanent damages to the freehold, and the declaration alleged a freehold estate in the wife. The evidence showed a deed to a trustee to hold for the use and benefit of the wife, and it was held not to be a material variance, the court saying that the question of variance depended upon whether the plaintiffs could maintain the action upon the facts; and, holding that the title was sufficient to authorize a recovery, it followed that there was not a variance. It was further said that the judgment in favor of the wife beneficiary would be *res judicata* against the trustee both at law and in equity. The defendant could not have been misled to his prejudice by the averment that the lands were leased to the plaintiff, for he made no claim of title in himself by the answer, and there is nothing in the record to show that he had or claimed any title or right or interest in the property.

It was alleged that the plaintiff was in possession of the premises at the time of the alleged trespass and the evidence which was stricken out tended to support that allegation. Mr. Carmody was not cross-examined as to the character or the facts of the plaintiff's possession, except that he was asked if the lands were fenced or the corners marked by posts or stakes. He answered that they were not. Clearly the fact that the lands were not fenced and that the corners were not marked by posts or stakes would not authorize the court to say as a matter of law that actual possession was not established. Nor was it proper to strike out the testi-

mony as to possession on the ground that the plaintiff had not shown a title conferring a right of possession. So far as the question of actual possession is concerned we think it obvious that the testimony was sufficient to be submitted to the jury; and upon finding that the plaintiff had actual possession and that the defendant had no better title the plaintiff might then have recovered in this action upon showing that the defendant had trespassed upon the lands as alleged in the petition. In Henderson v. Coleman, 115 Pac. 439, the plaintiffs recovered in the action upon showing that they were jointly in possession and entitled to the possession for the purpose of pasturing their cattle upon the lands trespassed upon, although one of the tracts involved was held by one of the plaintiffs under a lease from the state.

The evidence of the witness Carmody relating his transaction with Mr. Earle respecting the purchase of the sheep and the leasing of the lands at least tended to show that he arranged for the lease and paid the rent on behalf of and for the firm, and that testimony in connection with the fact that the plaintiff had possession of the land would have been sufficient for submission to the jury to determine whether the plaintiff had a right to possession, if that question became material. And the fact that the lease was in writing did not make the proof of the circumstances under which it was taken and held incompetent. In our view of the case, therefore, the plaintiff should have been permitted to show that the land was leased for the sole and exclusive use and benefit of the plaintiff partnership, and that the partnership had paid the rent and had possession. After that showing, if not before, the lease would have been admissible. But proof of such facts would have been competent in connection with an offer of the lease, and was competent when the offer of such proof was made, notwithstanding what had appeared as to the names of the lessees written in the lease. It is unnecessary to consider the questions raised as to the alleged trespass upon the other lands described in the petition. We think the court erred in the rulings above mentioned, and

for that reason the judgment must be reversed. It will be so ordered and the case remanded for new trial.

BEARD, C. J., and SCOTT, J., concur.