AVON GIN CO. *v.* BOND.

(In Banc. May 28, 1945. Suggestion of Error Overruled June 11,
1945.)

[22 So. (2d) 362. No. 35878.]

Farish, Keady & Branton, of Greenville, for appellant.

Ernest Kellner, of Greenville, for appellee.

**McGehee, J.**, delivered the opinion of the court.

The sole question presented for decision on this appeal is the construction of Section 4485, Code 1942, defining the rights of a shareholder of capital stock in an incorporated association of producers of agricultural products which has been organized under the agricultural association law of this state, when such shareholder has ceased to be eligible to hold his stock by reason of the fact that he is no longer a producer of agricultural products.

The applicable provisions of the statute involved are:
 (1) ''Stock shall be issued only to, and held only by, producers of agricultural products who make use of the services and facilities of the association, or agricultural associations, organizations, federations or corporations organized under this act, or whose purposes and operations are in harmony with the purposes of this act. But the articles of association may limit the ownership of stock to such producers of agricultural products. Dividends upon the capital stock shall not be declared or paid in excess of 8% per annum. Each share of stock shall entitle the holder thereof to one vote in the management of the association. Shares of stock shall not be transferable except to producers of agricultural products, or organizations to whom they could be issued, and no person shall acquire them by option of law. If any shareholder shall cease to be eligible to hold his shares, or shall die, or shall be dissolved, and if his shares be not promptly transferred to some producer or organization eligible to

hold the same, the association shall take up such shares at par value or, at the option of the association, at appraised value, such value to be conclusively fixed by the board of directors of the association, and the association may pay therefor in cash or by certificate of indebtedness to be thereafter paid from the income of the association.

(2) "All shareholders shall be members of the association, but there may also be members who are not shareholders. Some additional members shall have no vote in the management of the association; but they shall be entitled to all other benefits of the association equally with members who are shareholders, as if it were organized without capital stock, except that they shall have no right to stock dividends.

(3) "If any shareholder shall attempt to transfer his shares except as permitted, such shares may at the option of the association be taken up as in case of the death of a shareholder.

(4) "Upon the dissolution of the association, any assets remaining after the payment of debts and the retiring of outstanding stock at par value, shall be divided among the members, whether shareholders or not."

The purposes of the agricultural association law are defined by Section 4478, Code 1942, as being "to promote the general welfare of agriculture; to enable producers of agricultural products in the state of Mississippi to co-operate in the productions, processing, packing, distribution, financing and marketing of agricultural products, and the elimination of speculation and waste therein; to enable such producers to organize incorporated associations with or without capital stock and not for profit but for service to their members by the organization and operation of such corporations by a simplified and inexpensive procedure for the promotion and accomplishment of such co-operation and the general welfare of agriculture."

The appellee owns ten shares of stock in the appellant company, having a par value of $100 per share, and has

become ineligible to hold said stock because he has ceased to be a producer of agricultural products. The case was tried in the court below on an agreed statement of facts which discloses that the appellee has been unable to sell or transfer his stock to some producer or organization eligible to hold the same, but he contends that the association should pay to him a sum of money in such proportion as his ten shares of stock bear to the present assets of the association. It is conceded that if the assets of the association were now liquidated and distributed among the existing shareholders alone, the distributive share to be apportioned to the appellee's stock as his aliquot share of such assets would amount to $1,336.03. The appellant association contends, however, that it has the right to take up appellee's shares of stock at par value and it is agreed that $1,000, being the par value of the stock, has been offered to the appellee and declined by him. The precise issue is, therefore, whether such an incorporated association can be compelled, against its objection, to pay more than the par value for the stock held by a shareholder who has become ineligible.

The appellee further contends that the sentence contained in the first paragraph hereinbefore quoted from Section 4485, Code 1942, to the effect that "if any shareholder shall cease to be eligible to hold his shares, or shall die, or shall be dissolved, and if his shares be not promptly transferred to some producer or organization eligible to hold the same, the association shall take up such shares at par value or, at the option of the association, at appraised value, such value to be conclusively fixed by the board of directors of the association, and the association may pay therefor in cash or by certificate of indebtedness to be thereafter paid from the income of the association," should be construed to read, "if any shareholder shall cease to be eligible to hold his shares, or shall die, or (the association) shall be dissolved," etc. In our opinion, however, if the wording of this provision should be so construed or amended it would not fit into the remainder

of the sentence above quoted. Nor does it appear to us that such an amendment would be appropriate even though we were authorized to make it, since the very sentence which the appellee seeks to have modified by construction recognizes that such shares of stock could be issued to "organizations," and it is clear from the entire chapter on these co-operative associations that a planting company, partnership or corporation may own such stock, and hence as such holder they may become dissolved, without being able to transfer the stock to some other producer or organization eligible to hold the same.

The trial court adopted the contention of the appellee, under this or some other construction of the wording of the statute, and rendered a decree in his favor for the said sum of $1,336.03, the amount which the agreed statement of facts says "is to be taken as true if the assets of the defendant (appellant) as of April 15, 1944, were to be divided among the existing stockholders of defendant (appellant)."

The granting of such relief to the appellee shareholder in his suit to recover that amount while the incorporated association is still a going concern, entirely ignores the fourth provision hereinbefore quoted from this statute to the effect that "upon the dissolution of the association, any assets remaining after the payment of debts and the retiring of outstanding stock at par value, shall be divided among the members, whether shareholders or not." Since the right is given by the statute to the non-shareholder, whose patronage at the gin helped to create its assets, to share upon its dissolution in such of the assets as remain after the payment of debts and the retiring of outstanding stock at par value, it would necessarily follow that their rights would be violated by paying to a shareholder who becomes ineligible to hold his stock more than the par value thereof. Moreover, the statute expressly confers upon the association, as hereinbefore shown, the right to "take up such shares at par value or, at the option of the association, at appraised value." And

it is agreed that the board of directors adopted a resolution to purchase appellee's stock at its par value of $1,000 and to issue its certificate of indebtedness to appellee in that amount payable December 1, 1944, out of the earnings of the appellant during the fall of 1944 and notified the appellee thereof prior to the filing of this suit, which was refused by the appellee. The right of the board of directors to take such action is expressly recognized in the provision of the statute to the effect that "the association may pay therefor in cash or by certificate of indebtedness to be thereafter paid from the income of the association."

Nor do we think that the construction contended for by the appellant, and which we approve as being correct, has the effect of violating any constitutional right of the appellee in depriving him of his property without due process of law. Upon becoming a member of the association he was charged with notice that his income from such stock while the association is a going concern is limited to the dividends that may be payable thereon, not in excess of 8% per annum, and the return of his money at the par value of this stock, unless the association should elect to redeem said stock at its appraised value. The rights of such a shareholder are controlled by the law under which the association was organized and which must be read into his contract of purchase of the stock. This law imposes upon such an association the absolute duty of taking up and paying for his stock when he ceases to be a producer of agricultural products and is unable to transfer the same to some other producer, whereas no such duty is imposed upon an ordinary business corporation organized for profit.

The case is one of first impression before the court and there is no decision in point from any other jurisdiction cited by counsel construing similar provisions of such a statute. But we are of the opinion that the trial court was in error in entering a decree for more than the sum of $1,000, the amount tendered as the par value of the

stock of the appellee. The decree appealed from must, therefore, be reversed and a decree entered here for the sum of $1,000 in favor of the appellee, but without liability on the part of the appellant for the payment of any costs in either court.

Reversed and judgment here.